IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. WR-50,360-04






EX PARTE KIMBERLY LAGAYLE MCCARTHY, Applicant






ON APPLICATION FOR POST-CONVICTION WRIT OF HABEAS CORPUS


AND MOTION TO STAY THE EXECUTION


IN CAUSE NO. F97-34795-V IN THE

292ND DISTRICT COURT OF DALLAS COUNTY




 Alcala, J., filed a dissenting statement, in which Johnson, J., joins.

DISSENTING STATEMENT

 The sound of crickets. Silence. That is this Court's response to the Supreme Court's
recent decision in Trevino v. Thaler, 569 U.S. ___, 133 S. Ct. 1911 (2013), a case that
ultimately may prove to expand a defendant's right to counsel in the same way that the right
was established in the landmark decision of Gideon v. Wainwright, 372 U.S. 335 (1963). (1) 
Rather than address the implications of this important decision, this Court, by order and
without opinion, cites Kimberly McCarthy, applicant, for abuse of the writ and dismisses her
subsequent application for a writ of habeas corpus. See Tex. Code Crim. Proc. art. 11.071,
§ 5(a). In this application, applicant contends that her trial counsel was ineffective for failing
to object to the State's allegedly discriminatory use of peremptory challenges during jury
selection in her capital-murder trial, and that her initial habeas attorney was also ineffective
for failing to raise the issue of trial counsel's deficient performance in her initial application
for a writ of habeas corpus. (2)
 Because I disagree with the Court's cursory dismissal of this
application, I respectfully dissent. I conclude that this Court should: (1) grant applicant's
motion, which asks this Court to stay her execution in order to reconsider applicant's claim 
"in the wake and context of Trevino"; and (2) write a detailed opinion addressing the
implications of Trevino on applicant's subsequent writ application. I would hold that this
Court has jurisdiction to address her current application under the procedural rules for
subsequent writs and resolve her claims on the merits.

I. This Court's Decisions for Subsequent Writs Should Be Reconsidered

 In light of Trevino, this Court should reconsider its holding in Ex parte Graves, 70
S.W.3d 103 (Tex. Crim. App. 2002). Prior to Trevino, this Court held in Graves that a claim
of ineffective assistance of prior habeas counsel was not cognizable on habeas corpus. Id. at 
105. We concluded that such a claim could not, therefore, form the basis for consideration
of a subsequent writ under Code of Criminal Procedure article 11.071, nor could it serve as
a gateway to consideration of otherwise procedurally barred claims. See Tex. Code Crim.
Proc. art. 11.071, § 5; Graves, 70 S.W.3d at 117-18.

 Four of the underlying concepts for the decision in Graves, however, no longer apply
after Trevino. Graves, 70 S.W.3d at 117-18. First, in light of the Supreme Court's decision
to permit federal courts to consider the effectiveness of habeas counsel despite its holding
that there is no constitutional right to counsel in a habeas proceeding, this Court should
reconsider Graves's underlying premise that the absence of a constitutional right to counsel
necessarily means that an applicant may not challenge the effectiveness of habeas counsel's
representation. Id. In Graves, relying on the principle that a convicted individual has no
federal or state constitutional right to habeas counsel, this Court held that a habeas applicant
may not challenge the effectiveness of her habeas counsel in a post-conviction proceeding. 
Id. at 116. This Court summarized that, 

 neither the United States Supreme Court nor this Court has ever held that a
habeas petitioner has a federal or state constitutional right to counsel in a
habeas proceeding. Absent such a constitutional right to counsel, there can be
no constitutional right to effective assistance of counsel in a habeas
proceeding.


Id. But Martinez v. Ryan, which became applicable to Texas through Trevino, permits a
federal court to consider the ineffectiveness of habeas counsel when deciding whether to
excuse a federal habeas petitioner's procedural default of a substantial claim of ineffective
assistance of trial counsel. See Trevino, 133 S. Ct. at 1921 (citing Martinez v. Ryan, 566 U.S.
___, 132 S. Ct. 1309, 1320 (2012)). Understanding that the Supreme Court did not change
its position that there is no federal constitutional right to habeas counsel, it appears that
Trevino did carve out a procedural exception for federal courts that will, in effect, permit
consideration of what would otherwise be procedurally defaulted claims of ineffective
assistance of trial counsel. Id. That exception will be triggered whenever a federal court
determines that the claim is "substantial" and was procedurally defaulted as a result of
ineffective assistance of habeas counsel. Id. This Court's holding in Graves must be
reexamined in light of the change in the law brought about by Trevino. See Graves, 70
S.W.3d at 117-18; Trevino, 133 S. Ct. at 1920-21.

 Second, in light of the Supreme Court's decision to permit federal courts to consider
the effectiveness of habeas counsel as a means of overcoming procedural default, this Court
should reconsider Graves's underlying principle that an applicant may never challenge the
effectiveness of habeas counsel because habeas proceedings are limited to complaints about
the trial proceedings. Id. In Graves, this Court explained that, 

 an allegation of ineffective assistance of counsel in a habeas proceeding is
entirely derivative; it does not attack the validity, fairness, or constitutionality
of the original trial proceeding. It is merely a 'gateway' device used to allow
an inmate to resurrect a procedurally defaulted claim which he failed to bring
at the proper time.

Id. This principle has also been undermined by Trevino. See Trevino, 133 S. Ct. at 1919. 
The Supreme Court has now determined that, in Texas, the proper time to challenge the
ineffectiveness of trial counsel is in an application for a writ of habeas corpus. Id. at 1920-21.
On this basis, the Supreme Court concluded that federal courts may now consider, as an
exception to the normal federal procedural-default rules, any substantial claim of ineffective
assistance of trial counsel "if, in the initial-review collateral proceeding, there was no counsel
or counsel in that proceeding was ineffective." Id. at 1921 (citing Martinez, 132 S. Ct. at
1320). See id. The fact that a claim of ineffective assistance of habeas counsel is a mere
"gateway device" to consideration of other claims is no longer a sound reason to decline to
consider it.

 Third, this Court should reconsider Graves's underlying rationale that the State's
interest in the finality of convictions weighs against permitting consideration of subsequent
writs. Graves, 70 S.W.3d at 117. Unless this Court revises its current approach, federal courts
will now have the opportunity to decide a vast number of ineffective-assistance claims de
novo, without any prior consideration of those claims in state court. The State's interest in
the finality of convictions would be better served by permitting state courts to address these
ineffective-assistance claims on the merits. (3) This would restore normal procedural-default
rules in federal court, as well as reinstate the normally deferential standard of review that
federal courts apply to post-conviction claims previously adjudicated on the merits in state
court.

 Fourth, Graves relied on Coleman v. Thompson as a basis to limit this Court's
consideration of subsequent writs, but that decision has now been modified by the Supreme
Court. See Coleman v. Thompson, 501 U.S. 722 (1991). Since Coleman was decided, the
Supreme Court has held that a "'narrow exception' should 'modify the unqualified statement
in Coleman that an attorney's ignorance or inadvertence in a post-conviction proceeding does
not qualify as cause to excuse a procedural default.'" Trevino, 133 S. Ct. at 1917 (quoting
Martinez, 132 S. Ct. at 1315). Because Graves relied on Coleman as a concept underlying
its holding, this Court should reconsider Graves in light of the Supreme Court's modification
of Coleman. 

 Because part of its foundation has been weakened in light of Trevino, Graves should
be reconsidered and modified. Graves could be left largely intact to the extent that it holds
that, ordinarily, an applicant in a subsequent writ may not raise, as a stand-alone claim, a
complaint about the effectiveness of initial habeas counsel. This Court, however, could
permit an equitable exception that would mirror the federal exception recognized in Trevino.
Such an exception would permit this Court to consider a claim of ineffective assistance of
habeas counsel as a gateway to considering an otherwise-forfeited claim of ineffective
assistance of trial counsel. At the very least, this Court should address applicant's arguments
regarding the implications of Trevino and write an opinion explaining what approach we will
take going forward. Instead, there is only the sound of crickets.

II. Trevino May Be the Sequel to Gideon

 To better understand the potentially expansive application of the Trevino decision to
ineffective-assistance claims arising from actions in Texas state courts, a brief analysis of
Trevino and its predecessor, Martinez v. Ryan, is essential. See Trevino, 133 S. Ct. at 1921-22; Martinez, 132 S. Ct. at 1318. In Martinez, the Supreme Court, for the first time,
recognized that a federal habeas court could consider a procedurally defaulted claim of
ineffective assistance of trial counsel if the procedural default was caused by the
ineffectiveness of initial habeas counsel in state post-conviction proceedings. Martinez, 132
S. Ct. at 1320 (holding that "procedural default will not bar a federal habeas court from
hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral
proceeding, there was no counsel or counsel in that proceeding was ineffective"). Citing to
Gideon, the Supreme Court in Martinez determined that a "prisoner's inability to present a
claim of trial error is of particular concern when the claim is one of ineffective assistance of
counsel," a right that is "a bedrock principle in our justice system." Id. at 1317 (citing
Gideon, 372 U.S. at 344). 

 At the time it was decided, Martinez did not appear to affect Texas because it was
limited to situations in which a state required ineffective-assistance-of-trial-counsel claims
to be raised during habeas proceedings, and Texas permitted those claims to be asserted
either on direct appeal or on habeas. Id. Last month, things changed. Martinez now
expressly applies to Texas. Trevino, 133 S. Ct. at 1921. The Supreme Court decided that,
although Texas has a mechanism for challenging the effectiveness of a trial attorney on direct
appeal, this Court has (1) discouraged use of that procedure because the record is ordinarily
undeveloped within the 30-day period during which the motion for new trial and appeal must
be filed, and (2) rarely granted relief on those claims through direct appeal. Id. at 1918-20.
Texas, said the Supreme Court, effectively has a procedure that requires that habeas counsel
raise ineffective-assistance-of-trial-counsel claims in the initial state habeas application. Id. 
And Texas does not ordinarily permit an applicant to raise, in a state habeas proceeding, a
claim of ineffective assistance of habeas counsel. Id. at 1921. This makes the Texas
procedure indistinguishable from the procedure found to be unacceptable in Martinez. (4) Id. 
After Trevino, in a subsequent application for a writ of habeas corpus, as here, an applicant
has the opportunity to have a federal court decide on the merits whether the initial habeas
counsel was ineffective in the way that he handled a claim of ineffective assistance of trial
counsel. Id. If the federal court determines that ineffective assistance of habeas counsel
constitutes adequate cause for a procedural default of the underlying ineffective-assistance-of-trial-counsel claim, then the federal court may go on to consider the merits of that
otherwise forfeited ineffective-assistance claim. Id. at 1917-18 (citing Coleman, 501 U.S. at
732). Because Texas state courts decline to hear these complaints, the federal courts will
decide these ineffective-assistance claims in the first instance without state courts ever
having had the opportunity to review them. See id. at 1919-20. 

 Only time will tell whether Trevino is a landmark decision in Texas similar to
Gideon's requirement that indigent defendants be appointed competent counsel. Gideon, 372
U.S. at 335. For now, Trevino's holding suggests that it will. It, for the first time, tells Texas
inmates that they have the opportunity to challenge the effectiveness of habeas counsel with
respect to the handling of an ineffective-assistance-of-trial-counsel claim. Trevino, 133 S.
Ct. at 1921. That concept, until last month, was foreign to Texas. 

 Trevino changes the landscape in Texas for all "substantial" claims that trial counsel
was ineffective, whether a defendant was sentenced to probation, imprisonment, or death. 
Id. at 1920-21. Texas has now, in a significant number of cases, lost the ability to decide the
important matter of the effectiveness of trial counsel in our state courts. That claim will now
be addressed in large part by federal courts if Texas does not reassess its current procedures. 
At the very least, we should write an opinion explaining why the rules for subsequent
applications must stay the same or change. But instead there is only the sound of crickets.

III. The Future for Texas State Court Claims on Ineffective Assistance Option One: Do Nothing

 One option for this Court is to do nothing. This Court can leave Graves alone, even
though current law makes its rationale seriously flawed. See Graves, 70 S.W.3d at 117-18. 
 This Court can watch the federal courts decide ineffective-assistance-of-trial-counsel claims
for all of Texas's state courts. This is a "You want it, you got it" point of view. For me,
picking up my toys and going home has never been a good solution to a problem. I believe
we should address this challenge head-on. At the very least, if this is the approach that this
Court intends to take, then the litigants in Texas state courts should be able to cite to an
opinion that explains that this is our approach so that they can plan accordingly.

 Option Two: Re-write the Texas Rules of Appellate Procedure

 Another option may be to reconsider the Texas Rules of Appellate Procedure to make
litigation of ineffective-assistance claims a realistic option on direct appeal. Part of the
rationale in Trevino was that "Texas procedure makes it 'virtually impossible for appellate
counsel to adequately present an ineffective assistance [of trial counsel] claim' on direct
review." Trevino, 133 S. Ct. at 1918. The Supreme Court observed that the time limits for
motions for new trial make a transcript of the trial unavailable at the time when the motion
must be filed, which makes it difficult, if not impossible, to review a transcript to determine
whether trial counsel was ineffective. Id. Texas may be able to solve this issue with only
a slight modification to our rules of appellate procedure. Rather than requiring a motion for
new trial and notice of appeal within 30 days, perhaps these could be due in 90 days instead. 
The Texas rules of appellate procedure could require transcripts to be prepared within 60
days. This may not be as difficult as it might first appear in light of the computer age and
real-time court reporting. The attorney appointed to represent a defendant in a direct appeal
would have the benefit of the entire transcript in mounting his challenge to the effectiveness
of trial counsel. This would make the Texas situation unlike the one in Martinez and, I
believe, would restore the federal procedural-default rules that normally apply to state
prisoners' habeas claims in federal court. 

 Our Texas rules of appellate procedure are decades old and a re-examination of the
time requirements may be in order. At the very least, this Court should form a committee to
examine whether a revision of the Texas rules of appellate procedure would be appropriate
and feasible to address the concerns of the Supreme Court outlined in Trevino. (5)

 Option Three: Permit Subsequent Writ on Ineffectiveness of Habeas Counsel

 Another possible option for Texas could be to modify Graves so that this Court may
address the merits of a prisoner's challenge to the effectiveness of the initial habeas counsel
as a means of excusing procedural default of ineffective-assistance-of-trial-counsel claims. 
In her motion for stay of execution and subsequent writ application, applicant contends that
the Solicitor General of Texas, representing the State of Texas before the Supreme Court in
Trevino, argued that this Court should have the opportunity to reevaluate its decisions
disallowing subsequent applications for writs of habeas corpus like the one presented here.
The Solicitor General has suggested that this Court could carve out its own equitable
exception to the state-law bar on subsequent writs, as we have done in several previous cases,
to permit consideration of these defaulted claims. See, e.g., Ex parte Medina, 361 S.W.3d
633, 642-43 (Tex. Crim. App. 2011) (per curiam) (holding that prior application was so
defective that it did not constitute an application for Section 5 purposes); Ex parte
Matamoros, No. WR-50,791-02, 2011 WL 6241295, 2011 Tex. Crim. App. Unpub. LEXIS
931 (Tex. Crim. App. Dec. 14, 2011) (per curiam) (permitting applicant to reopen defaulted
claim); Ex parte Moreno, 245 S.W.3d 419, 420 (Tex. Crim. App. 2008) (same). Applicant
quotes the Solicitor General's brief to the Supreme Court as stating, 

 When the CCA issued its procedural-default ruling [in Trevino's case] in 2005,
it had no reason to doubt the adequacy of the state-law ground supporting its
denial of Trevino's habeas application. If this Court changes the rule now,
equity demands at a minimum that the CCA have an opportunity to reevaluate
its procedural ruling and adjudicate Trevino's Wiggins [v. Smith, 539 U.S. 510
(2003)] claim on the merits. 


 Perhaps open to this invitation, the Supreme Court's opinion in Trevino states, "Given
this holding, Texas submits that its courts should be permitted, in the first instance, to decide
the merits of Trevino's ineffective-assistance-of-trial-counsel claim. We leave that matter
to be determined on remand." Trevino, 133 S. Ct. at 1921. At the very least, we should
address the concerns of the Texas Solicitor General that he argued to the Supreme Court. We
should address whether Texas should create an equitable exception to the state-law bar on
successive applications based on an allegation of ineffective assistance of state-habeas
counsel, if that ineffectiveness resulted in procedural default of a substantial ineffective-assistance-of-trial-counsel claim. IV. Conclusion 

 Texas has many choices. We can do nothing, alter the rules of appellate procedure,
modify Graves and consider the merits of these types of claims in a subsequent writ, or take
some other action that we determine to be appropriate under the circumstances. If we do not
take action to address an inmate's right to have her ineffective-assistance-of-trial-counsel
claim fully heard, Texas will relegate a substantial number of these claims to be decided by
the federal courts rather than by our state courts. It will be a federal take-over. And this
Court will stand by watching as it happens, doing nothing, and saying nothing. All that will
be heard is the sound of crickets. For that reason, I must, most respectfully, very strongly
dissent.

Filed: June 24, 2013

Do Not Publish
1. In Trevino, the Supreme Court concluded that when a state's procedural framework, by
reason of its design and operation, makes it highly unlikely in a typical case that a defendant will
have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct
appeal, then the holding in Martinez v. Ryan applies. See Trevino v. Thaler, 569 U.S. ___, 133 S.
Ct. 1911, 1921 (2013) (citing Martinez v. Ryan, 566 U.S. ___, 132 S. Ct. 1309, 1316 (2012) (holding
that ineffective assistance of habeas counsel may serve to excuse procedural default of substantial
claim of ineffective assistance of trial counsel)).
2. Applicant claims that the State violated her equal-protection rights by its use of peremptory
strikes to exclude three of the four qualified non-white venire members. Applicant further asserts
that trial counsel was ineffective for failure to object to the State's discriminatory use of peremptory
strikes at trial, and that habeas counsel was ineffective for failure to raise this claim in her initial writ
application.

3. As applicant notes in her application, the State of Texas's briefing in Trevino reflects that,
when "faced with the choice of giving the federal courts sole jurisdiction to review the effectiveness
of state habeas counsel--and de novo federal review of trial ineffectiveness claims when state habeas
counsel was ineffective--the State of Texas has prioritized its interest in state court review ahead
of its finality interest." Applicant further contends that, in the wake of Trevino, the State of Texas
has filed a brief asking the federal district court to permit this Court to consider Trevino's
ineffective-assistance claim in the first instance so that normal procedural-default rules would apply
in federal court. On these bases, applicant concludes that "the State of Texas and the applicant agree
that this Court can and should fashion a response to Trevino" that "reassesses whether the State's
comity and federalism interests now outweigh a necessarily limited intrusion on the State's interest
in finality." 
4. In Martinez, the Supreme Court determined that a federal habeas court could find "cause"
to excuse a defendant's procedural default in a federal petition for a writ of habeas corpus if (1) the
claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted
of there being "no counsel" or only "ineffective counsel during the state collateral review
proceeding"; (3) the state collateral review proceeding was the "initial" review proceeding with
respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an
"ineffective-assistance-of-trial-counsel [claim] . . . be raised in an initial-review collateral
proceeding." Trevino, 133 S. Ct. at 1917-18 (citing Martinez, 132 S. Ct. at 1316-18). Trevino
pointed out that the first three circumstances in Martinez applied to Texas, and the fourth
circumstance, which "on its face" did not seem to apply, also applied "as a matter of course."
Trevino, 133 S. Ct. at 1921.
5. A revision of the Texas rules of appellate procedure would affect only future cases in which
an appeal has not been filed and, therefore, would not be a solution for all cases. Also, I recognize
that non-record-based complaints about trial counsel may be more difficult to ascertain within 60
days, and that extending the period of time may initially lengthen the appeals process. It may be,
however, that even though the initial direct appeal may take longer, the case would become final
sooner because the state and federal post-conviction processes would run more smoothly under
operation of normal procedural-default rules. The viability of this option would require close
examination and input from a group of stakeholders including trial judges, prosecutors, defense
attorneys, court reporters, court clerks, and appellate judges.