IN THE COURT OF CRIMINAL APPEALS

OF TEXAS




NO. WR-50,360-04




EX PARTE KIMBERLY LAGAYLE MCCARTHY, Applicant




ON APPLICATION FOR POST-CONVICTION WRIT OF HABEAS CORPUS

AND MOTION TO STAY THE EXECUTION

IN CAUSE NO. F97-34795-V IN THE

292nd DISTRICT COURT OF DALLAS COUNTY




 Cochran, J., filed a statement concurring in the dismissal of the application.

 I agree with the Court's decision to dismiss applicant's second subsequent application
for a writ of habeas corpus. Applicant filed this application one week before her scheduled
execution, alleging that we should address the merits of the very same ineffective-assistance-of-trial-counsel claim that we had previously rejected. She now claims that her original
habeas counsel, as well as her trial attorneys, all provided ineffective assistance of counsel
in failing to claim that the State exercised its peremptory challenges in a racially-
discriminatory manner. At no time during the voir dire, trial, appeal, or original writ
proceedings did applicant object to any perceived discrimination by the prosecutors. Article
11.071 § 5 prohibits an applicant from raising a claim in a subsequent application that she
could have raised in a previous application. If we are to follow our clear and explicit Texas
statute, we are required to dismiss this application. 

 I respectfully disagree with the dissent that all we are doing is making "[t]he sound
of crickets." This Court does not have the inherent authority to commit the State of Texas
to the financial responsibility of ignoring or altering our entire statutory post-conviction
collateral review system simply to avoid full federal review of our state convictions. The
strictures and procedures of the congressionally enacted federal "deferential review"
mechanism of AEDPA (1) were essentially overruled in Martinez v. Ryan, (2) and Trevino v.
Thaler. (3) But it is federal courts, not state courts, that must implement this new de novo
review.

 In essence, Martinez and Trevino hold that all state-court prisoners may have the
merits of their claims of ineffective assistance of trial counsel considered de novo by federal
district and circuits courts unless: (1) the State has provided habeas counsel, and (2) that
habeas counsel has been deemed by the federal courts to have provided effective assistance. (4) 
Thus, federal courts will be reviewing all habeas applications filed from state convictions
without deference to the state court unless and until they determine that a state-provided
habeas attorney did, in fact, provide effective representation even though he did not bring
certain ineffective-assistance-of-trial-counsel claims. That federal review will necessarily
require analysis of the merits of both the work of the habeas attorney and the work of trial
counsel. 

 And why should the State of Texas spend millions of dollars every year to provide
habeas counsel for every inmate when the federal courts will nonetheless be reviewing those
claims outside the deferential prism of AEDPA? 

 Let us look at the practical issues. The total cost of indigent defense in Texas for
fiscal year 2012 was over $207 million. (5) In 2012, Texas spent over $96 million in attorney
fees to provide trial representation to indigent felony defendants. (6) It spent almost $5 million
to provide counsel to 2500 indigent felony defendants on direct appeal. (7) We do not know
how many defendants would want counsel appointed to represent them in a writ of habeas
corpus, but if representation is free and there is no risk or cost to the inmate, why would any
inmate turn it down? (8) One could fairly assume that at least the same number of defendants
who wish for representation on direct appeal would also wish for representation for purposes
of bringing a writ of habeas corpus as well.

 But, we know for certain that, in the 2012 fiscal year, Texas inmates filed 4,701
original and supplemental writs of habeas corpus in felony cases. (9) If those numbers
remained constant even if the State offers to pay for counsel for all inmates who want to file
writ applications alleging that their trial counsel did a bad job (As Justice Scalia drily noted, 
"Has a duly convicted defendant ever been effectively represented?" (10)), we can assume at
least 4,700 new writs alleging ineffective assistance of trial counsel every year. (11)

 Investigating, drafting, and litigating writs of habeas corpus is considerably more
labor intensive than writing a direct appeal. Appellate representation for 2500 felony
defendants cost $5 million last year, so, on average, each direct-appeal attorney was paid
$2,000 per appeal. Attorney costs for habeas proceedings may cost at least twice as much,
or $4,000 per non-capital habeas applicant. (12) Assuming no increase in the number of habeas
applications per year, 4,700 applications per year at a cost of $4,000 each would add up to
more than $16 million per year or $32 million per biennium to provide representation for
habeas applicants in Texas. (13) This is an amount that the Texas Legislature would need to
allocate before this Court could implement such a system. This Court cannot commit the
counties of Texas or the state itself to expenditures of this magnitude-simply to avoid full
federal review-without legislative approval and oversight.

 What would Texas be getting for its $32 million per biennium investment in a third
layer (trial, direct appeal, and habeas) of appointed lawyers for indigent felony defendants? 
Not much. (14) Under Martinez, and Trevino, all inmates who are provided with counsel for
filing state writs of habeas corpus, if not granted relief on their ineffective-assistance-of-trial-
counsel claims in state court, would still be entitled to file writ applications in federal court.
There, they could complain that the lawyer that the State of Texas provided for them on
habeas corpus review was ineffective because that lawyer failed to allege that the lawyer that
the State of Texas provided for them at trial was ineffective in some respect. That is, the
habeas lawyer might have alleged that the trial counsel was ineffective in ten different ways,
but if he did not allege that the trial lawyer was ineffective in some eleventh or twelfth way,
that is sufficient to obtain access to the federal courts. And the federal courts would then
review de novo the allegation that the state habeas attorney was ineffective. In analyzing that
question, the federal courts would necessarily have to address the merits of the underlying
claim that trial counsel was ineffective in the specific manner alleged. 

 Or suppose that this Court jettisoned its prior decision in Ex parte Graves, (15) and held
that an inmate can bring a subsequent state-court writ alleging that his first habeas counsel
was ineffective for failing to raise a specific claim about his trial counsel's performance. The
state trial court would then analyze that claim and this Court would review the findings and
recommendations of the trial court. But if this Court decided, in this second round of habeas
review, that the new allegations of ineffective assistance of trial counsel were without merit,
the inmate could still go into federal court and claim that the original habeas counsel was
ineffective for failing to allege a specific claim about trial counsel's performance. So having
a second round of habeas review in state court would make no difference in deference by the
federal courts. Regardless of whether a state court does or does not provide habeas counsel
and regardless of whether a state court does or does not provide a second round of habeas
review addressing claims that the original habeas attorney was ineffective, the inmate can
still obtain de novo review in federal court of the Trevino claim that he either (1) did not have
habeas counsel, or (2) that his habeas counsel provided ineffective assistance of counsel.
Such a system requires a huge financial and time investment by the state but achieves little,
if anything, in comity and finality.

 Perhaps if Congress enacted legislation that absolutely barred the filing of a writ of
habeas corpus in federal court by a state prisoner if the state (1) provided both habeas counsel
(with federal financial assistance), and (2) permitted a second (uncompensated) round of
review for allegations of ineffective assistance of the first habeas counsel, legislators might
consider an appropriate shift of resources from federal courts to state courts that took into
account finality concerns as well as issues of comity.

 The Supreme Court's decision in Trevino is not based upon the federal Constitution,
but rather the Court's sense of "equity." Its decision affects the application of a federal
statute, AEDPA, to federal courts. Its decision affects the authority of federal courts. Its
decision does not address the authority of state courts. The implicit suggestion in Trevino
is that states should provide lawyers to indigent inmates for filing writs of habeas corpus
alleging that their state-provided trial lawyers were ineffective. That is an extremely onerous
financial burden on the states. But even when states do provide free representation for
habeas review, federal courts will still be required to review the effectiveness of the state-provided habeas attorney and will do so even if the state has both provided an attorney for
habeas claims and permitted a second round of habeas review to address the claim that the
first habeas attorney provided ineffective assistance of counsel. 

 Justice Scalia's prediction that the non-capital inmate will complete his sentence
before he completes his state and federal habeas review sounds realistic, as does his
prediction that, for those on death row, a natural death of old age will come before the
completion of state and federal habeas review. (16)

 The Solicitor General of Texas has suggested that this Court should have an
opportunity to reevaluate its prior rulings and procedures and address the merits of claims
brought in subsequent writs despite our Texas statutes barring such review. Unlike the
United States Supreme Court, we cannot create "equitable" exceptions to our habeas statutes. 
We must follow current statutory law. I agree with the Solicitor General, however, that the
Texas Legislature may wish to address the issues and concerns that the Trevino case raises. 
If the Legislature deems statutory changes appropriate, it must allocate the financial
resources necessary to support any such changes to the current law. 

Conclusion


 The Texas Legislature has many choices. This Court has few choices and no authority
to implement drastic changes that would seriously affect the financial stability of the Texas
criminal-justice system. Furthermore, unlike this Court, the various state legislatures may
work in tandem with Congress to enact appropriate state and federal legislation that ensures
fairness to those state-court inmates who may have a legitimate claim of ineffective
assistance of trial counsel while ensuring comity, finality, and the preservation of scarce state
resources. I do not desire "a federal take-over," (17) but I recognize that we do not have the
authority to commit the taxpayers of Texas to unanticipated, unapproved, and unfunded
mandates as suggested by the applicant in this case.

Filed: June 24, 2013

Do Not Publish
1. The Antiterrorism and Effective Death Penalty Act of 1996 (
AEDPA) authorizes a
federal habeas court to grant relief to a prisoner whose state court conviction "involved an
unreasonable application of ... clearly established Federal law, as determined by the Supreme
Court of the United States." 28 U.S.C. § 2254(d)(1). Under AEDPA, a state prisoner's habeas
claims could not be entertained by a federal court when (1) "a state court [has] declined to
address [those] claims because the prisoner had failed to meet a state procedural requirement,"
and (2) "the state judgment rests on independent and adequate state procedural grounds." Walker
v. Martin, 562 U.S. ___, ___, 131 S.Ct. 1120, 1127 (2011).

 Just two years ago, in Harrington v. Richter, 131 S.Ct. 770 (2011), the Supreme Court set
out the contours of the congressionally-enacted statutory limitation upon federal habeas review:

 Section 2254(d) is part of the basic structure of federal habeas jurisdiction,
designed to confirm that state courts are the principal forum for asserting
constitutional challenges to state convictions. Under the exhaustion requirement, a
habeas petitioner challenging a state conviction must first attempt to present his
claim in state court. 28 U.S.C. § 2254(b). If the state court rejects the claim on
procedural grounds, the claim is barred in federal court unless one of the
exceptions to the doctrine of Wainwright v. Sykes, 433 U.S. 72, 82-84, 97 S.Ct.
2497, 53 L.Ed.2d 594 (1977), applies. And if the state court denies the claim on
the merits, the claim is barred in federal court unless one of the exceptions to §
2254(d) set out in §§ 2254(d)(1) and (2) applies. Section 2254(d) thus
complements the exhaustion requirement and the doctrine of procedural bar to
ensure that state proceedings are the central process, not just a preliminary step for
a later federal habeas proceeding, see id., at 90, 97 S.Ct. 2497.

Id. at 787. Under Martinez and Trevino, that statutorily mandated deference is now "Gone with
the Wind" when it comes to claims of ineffective assistance of trial counsel.
2. 566 U.S. __, 132 S.Ct. 1309 (2012).
3. 569 U.S. __, 133 S.Ct. 1911 (2013).
4. Trevino, 133 S.Ct. at 1921; Martinez, 132 S.Ct. at 1316 (claims of ineffective assistance
of habeas counsel may excuse the procedural default of failing to raise a claim of ineffective
assistance of trial counsel in state habeas proceedings).
5. Texas Indigent Defense Commission, Indigent Defense Data for Texas,
Combined Statewide Indigent Defense Expenditure Report (fiscal year 2012), available at
http://tidc.tamu.edu/public.net/Reports/StateFinancialReport.aspx?fy=2012.
6. Id.
7. Id.
8. As Justice Scalia noted, if the states provide any counsel on habeas, they should provide
counsel to all habeas applicants: "[W]hoever advises the State would himself be guilty of
ineffective assistance if he did not counsel the appointment of state-collateral-review counsel in
all cases--lest the failure to raise that claim in the state proceedings be excused and the State be
propelled into federal habeas review of the adequacy of trial-court representation that occurred
many years ago." Martinez v. Ryan, 566 U.S. __, 132 S.Ct. 1309, 1322 (2012) (Scalia, J.,
dissenting).
9. Texas Office of Court Administration, Annual Report: Court of Criminal
Appeals Activity: FY 2012, available at http://www.txcourts.gov/pubs/AR2012/cca/
2-cca-activity.pdf.
10. Martinez v. Ryan, 566 U.S. ___, 132 S.Ct. 1309, 1322 (2012) (Scalia, J., dissenting).
11. Texas Office of Court Administration, Annual Report: Court of Criminal
Appeals Activity: FY 2011, available at http://www.txcourts.gov/pubs/AR2011/cca/
2-cca-activity.pdf. The number of state post-conviction writ applications had been steadily
declining over the past five years, but after Trevino, they cannot help but rise dramatically if
Texas changes its habeas policies and procedures.
12. As for death-penalty habeas applications, prior to the creation of the Office of Capital
Writs, the State allocated attorney fees of $25,000 per death-row inmate, but the county itself
could pay more. See Tex. Code Crim. Proc. art. 11.071, § 2A(a). 
13. And, indeed, if the state is to ensure truly "effective" representation for habeas
applicants, the attorney cost might well be double that estimate, and that estimate does not
include investigatory expenses, expert witness expenses, or administrative costs.
14. As Justice Scalia pointed out, 

 Of course even the appointment of state-collateral-review counsel will not 
guarantee that the State's criminal proceeding can be concluded without years-long federal retrial. Appointment of counsel may, as I have said, avoid federal
review of the adequacy of representation that occurred years ago, at the original
trial. But since, under today's opinion, the condition for exclusion of federal
habeas is the very same condition that would apply if appointment of state-collateral-review counsel were constitutionally required, it will remain to be
determined in federal habeas review whether the state-appointed counsel was
effective. Thus, as a consequence of today's decision the States will always be
forced to litigate in federal habeas, for all defaulted ineffective-assistance-of-trial-counsel claims (and who knows what other claims), either (1) the validity of the
defaulted claim (where collateral-review counsel was not appointed), or (2) the
effectiveness of collateral-review counsel (where collateral-review counsel was
appointed). The Court notes that many States already provide for the appointment
of counsel in first collateral challenges--as though this proves that what the Court
forces the States to do today is eminently reasonable. But what the Court fails to
point out is that currently, when state-appointed counsel does not raise an
ineffective-assistance-of-trial-counsel claim, that is the end of the matter: The
issue has been procedurally defaulted. By virtue of today's opinion, however, all
those cases can (and where capital punishment is at issue assuredly will ) proceed
to federal habeas on the issue of whether state-appointed counsel was ineffective
in failing to raise the ineffective-assistance-of-trial-counsel issue. 

Martinez, 132 S.Ct at 1322-23 (Scalia, J., dissenting).
15. 70 S.W.3d 103 (Tex. Crim. App. 2002).
16. Martinez, 132 S.Ct. at 1323-24 (Scalia, J., dissenting). Justice Scalia noted that
regardless of whether the state provides counsel for habeas applicants, federal habeas review will
proceed. "[E]xcept for the squandering of state taxpayers' money," this federal habeas review
will not effect much difference because the inmate will remain in prison serving out his sentence. 
But, Justice Scalia predicted,

 [I]n capital cases, it will effectively reduce the sentence, giving the defendant as
many more years to live, beyond the lives of the innocent victims whose life he
snuffed out, as the process of federal habeas may consume. I guarantee that an
assertion of ineffective assistance of trial counsel will be made in all capital cases
from this date on, causing (because of today's holding) execution of the sentence
to be deferred until either that claim, or the claim that appointed counsel was
ineffective in failing to make that claim, has worked its way through the federal
system.

Id.
17. See dissenting op. infra, at 13.