NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0803n.06

Case No. 14-5063

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Oct 23, 2014

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| FREDERICK MORROW, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| STATE OF TENNESSEE, et al., | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Respondents-Appellees. | ) | |
| | ) | |
| | ) | |

**O P I N I O N**

BEFORE: McKEAGUE and GRIFFIN, Circuit Judges; POLSTER, District Judge.[*]

**McKEAGUE, Circuit Judge.** While at a gas station in Tennessee, Frederick Morrow and his friends encountered a pickup truck flying the Confederate flag. Unhappy with this display and "looking for a fight," they chased the truck along a highway while Morrow fired several bullets. One struck the driver in the chest, and he died the next day. Morrow was convicted of civil rights intimidation, attempted aggravated kidnapping, and felony murder in Tennessee state court. He filed a petition for habeas corpus in the Middle District of Tennessee and the district court denied relief.

---

[*]The Honorable Dan A. Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

Morrow appeals the district court's denial of habeas relief on three grounds. First, he claims that the evidence was insufficient to convict him on attempted aggravated kidnapping and felony murder. Second, he argues that he received ineffective assistance of counsel due to his trial counsel's failure to interview and call an alleged key witness. Finally, he claims that the state violated his constitutional rights when the state supreme court denied his application for review of his direct appeal in light of a retroactively-applicable state law. We hold that the state court's determination did not involve an unreasonable application of clearly established federal law or an unreasonable determination of the facts, and that the ineffective-assistance claim along with his remaining constitutional claims are procedurally defaulted. We therefore AFFIRM.

**I.**

The underlying facts are not in serious dispute. On January 14, 1995, Michael Westerman and his wife, Hannah, both Caucasian, went out in Michael's pickup truck. Michael flew a full-size Confederate flag, the "mascot" of his high school, from a flagpole welded to the toolbox in the truckbed. The couple stopped in Guthrie, Kentucky, to buy gas at Janie's Market. Damien Darden, 17, was parked at Janie's Market with three friends in his car, Morrow, 17; Marcus Merriweather, 15; and Tony Andrews, 17. All four young men are African American.

Damien saw the Confederate flag and told his friends that he wanted to fight the occupants of the truck. Damien left briefly to gather more friends and two cars returned with him. In the first car, Robert Bell drove with Ricky Williams and Michael Mimms. In the second car, Octavius Burks drove with Marcus Darden, who is Damien Darden's brother. When the cars returned to Janie's Market, there was an encounter between the Westermans and Damien's car. The details of the encounter were disputed at trial. Andrews testified that Morrow yelled "hey"

and that a hand reached through the rear window of the Westermans' truck and shook the flag at them. Morrow claimed that Michael yelled "the 'n' word." R. 17-6 at 162–64.

The Westermans pulled out of Janie's Market and headed eastbound on Highway 41 towards Tennessee. Shortly thereafter, all three cars took off in pursuit of the truck. As Damien approached the Westermans from behind, Morrow fired two shots from the backseat window. Neither shot hit anything. The gun then jammed and while Morrow cleared it, he instructed Damien to pass the truck. The cars sped up to about 85 miles per hour and Michael pushed Hannah down to the floorboard. Morrow fired another shot. This time, the bullet went through the driver-side door and into Michael's chest. With Michael wounded, Hannah took the wheel and slowed down considerably. Damien passed her as Burks and Bell approached the truck from behind. Damien stopped in the middle of the highway as the truck continued to slow down and Morrow fired again at the truck and exclaimed, "[I've] got them now." R. 17-5 at 295.

Hannah testified that she could not go forward with Damien and Morrow blocking the road. And she said she could not reverse because Burks and Bell were behind her. As a result, she testified, she turned sharply to the left and drove through a ditch into a granary parking lot on the left-hand side of the road. She turned around in the parking lot to change direction, and there, she claims, she was met by three black men on foot blocking the paved exit, a fact that Morrow now disputes. Nevertheless, with this exit blocked, she stated that she traversed the ditch again and headed westbound to get help. Damien and his friends followed her, and Morrow took one more shot before they separated.

Michael died the next day from his injuries, and Morrow and his friends turned themselves into the authorities. The state proceedings garnered a lot of media attention, and racial tensions grew. Michael was eulogized as a "Confederate hero" in the local newspaper, and

a two-state parade was planned during which dozens of cars flew the Confederate flag in honor of his death.

The four occupants of Damien's car were charged with (1) one count of civil rights intimidation; (2) one count of premeditated first-degree murder; (3) one count of attempted aggravated kidnapping for attempting to box in the Westermans' truck; and (4) one count of felony murder. Andrews pleaded guilty to criminally negligent homicide and he served as the State's witness. Morrow, Merriweather, and Damien were tried jointly.

Morrow and Damien waived their right to a jury trial a couple of days before trial. At trial, the State argued that Hannah was "boxed in" between Damien's car and Morrow's gun pointing at her in front of her, Burks's and Bell's cars behind her, and three men on foot blocked the paved granary exit. Morrow, Damien, Merriweather, and Andrews all testified and denied any advance plan to trap the truck. During trial preparations, Morrow's counsel, Collier Goodlett, did not interview Burks, the driver of the third car and the only eyewitness who was not facing criminal charges, but Goodlett did have Burks's sworn statements to police. Burks allegedly would have denied any advance plan and testified that none of the men exited their cars, so they could not have blocked the truck on foot.

Morrow was convicted of civil rights intimidation, attempted aggravated kidnapping, and felony murder, but he was acquitted of first-degree murder. On direct appeal, Morrow argued, among other things, that the evidence was insufficient to support the conviction. But the state appellate court affirmed the convictions. *State v. Morrow*, No. 01C01-9612-CC-00512, 1998 WL 917802, at *12–14 (Tenn. Crim. App. Dec. 22, 1998).

Morrow submitted a late-filed application for permission to appeal to the Tennessee Supreme Court. It was denied as untimely, but the trial court later granted Morrow an additional

60 days to file a timely application. Morrow filed this application for permission to appeal on direct review *and* his post-conviction petition on November 11, 2002. The Tennessee Supreme Court stayed the post-conviction proceedings pending disposition of his direct appeal. In his application for direct review, Morrow argued that a new state law applied retroactively to his case and that he was entitled to a new trial. But his application on direct review was denied.

On January 7, 2005, the post-conviction court lifted the stay on its proceedings and on January 28, 2005, the court asked Morrow whether he wanted to amend his post-conviction petition to assert new claims following the denial of his direct appeal. Morrow declined. The post-conviction court denied relief and the appellate court affirmed. *Morrow v. Tennessee*, No. M2005-00554-CCA-R3-PC, 2006 WL 1931698 (Tenn. Crim. App. July 11, 2006). His post-conviction application to appeal to the Tennessee Supreme Court was also denied.

In federal court, Morrow filed an untimely petition for habeas relief with the United States District Court for the Middle District of Tennessee in October 2006. Due to the procedural posture of the case in state court, the district court accepted his late-filed application under *Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009), which held that a judgment is not yet final for the purposes of 28 U.S.C. § 2244(d)(1)(A) until the conclusion of an out-of-time direct appeal in state court. In his petition, Morrow claimed, among other things: (1) that the evidence was insufficient to convict for attempted kidnapping and felony murder; (2) ineffective assistance of trial counsel based on Goodlett's decision not to investigate Burks; and (3) that the Tennessee Supreme Court violated his due process and equal protection rights when it declined his application for review of his direct appeal in light of a new retroactively-applicable state law.

The district court denied relief after an evidentiary hearing. First, the court addressed Morrow's sufficiency-of-the-evidence claims under 28 U.S.C. § 2554(d) and dismissed them on

the merits. Next, the court concluded that Morrow had not presented a "substantial claim" of ineffective assistance of counsel in order to excuse procedural default because he could not show defective performance or actual prejudice under *Strickland*. *See Martinez v. Ryan*, 132 S. Ct. 1309, 1312 (2012). Finally, the court's opinion did not address directly Morrow's arguments regarding the change in state law, but the court dismissed the remainder of his claims as either procedurally defaulted or meritless.

## II.

For claims adjudicated on the merits in state court, we ask whether the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" under 28 U.S.C. § 2254(d)(1) or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under 28 U.S.C. § 2254(d)(2). For claims that petitioner failed to exhaust in state court, petitioner must show "cause" for the default and "prejudice" from the error. *Sutton v. Carpenter*, 745 F.3d 787, 789–90 (6th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991)). Otherwise, the claims are barred by procedural default. *Id.* This Court reviews *de novo* a district court's denial of a writ of habeas corpus. *Pinchon v. Myers*, 615 F.3d 631, 638 (6th Cir. 2010).

## A.

For Morrow's sufficiency-of-the-evidence challenge that was adjudicated on the merits in state court, the applicable "clearly established" standard asks whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Pinchon*, 615 F.3d at 643 (quoting *Jackson v. Virginia*, 433 U.S 307, 319 (1979)) (internal quotation marks omitted). On

habeas review, however, a federal court may only grant relief if the state court's decision was an "objectively unreasonable" application of that standard. *Jackson*, 433 U.S. at 319. So Morrow has a steep hill to climb.

Morrow argues that the State failed to prove felony murder beyond a reasonable doubt because (1) the evidence was insufficient to sustain a conviction for attempted kidnapping, and (2) even if there was sufficient evidence to sustain a conviction for attempted kidnapping, the evidence was insufficient to show that the shooting was done "in perpetration of" the attempt to kidnap. Each argument fails.

*Attempted Aggravated Kidnapping*. The state court acted reasonably in concluding that the evidence was sufficient to maintain a conviction for attempted aggravated kidnapping. Under Tennessee law, aggravated kidnapping consists of "false imprisonment . . . committed . . . [w]ith the intent to inflict serious bodily injury on or to terrorize the victim or another." Tenn. Code Ann. § 39-13-304(a) (1991). False imprisonment requires "knowingly remov[ing] or confin[ing] another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302(a) (1991). And criminal attempt requires the defendant, while "acting with the kind of culpability otherwise required for the offense [to act] with the intent to cause a result that is an element of the offense, and [that the defendant] believes . . . will cause the result without further conduct on the person's part." Tenn. Code Ann. § 39-12-101(a)(2) (1991). Intent can be proven by intentional conduct, *State v. Mann*, 959 S.W.2d 503, 518 (Tenn. 1997), and that intent can be formed in an instant, *State v. Brown*, 836 S.W.2d. 530, 540 (Tenn. 1992). The statute does not require direct evidence of defendant's mental state or any advance plan to act.

Morrow argues that the State's evidence was too ambiguous to show the intent required for attempt and that any interference on the Westermans' liberty was the result of an assault gone wrong. Morrow also argues that that there was sufficient space for escape because only one side of the highway was blocked and that no reasonable person would consider three men on foot capable of blocking a pickup truck.

Morrow's argument fails because the state court did not act unreasonably in holding that a reasonable trier of fact could conclude that Morrow intended a substantial interference with liberty as required under Tennessee law. It correctly recognized that it could not "reweigh or reevaluate the evidence." *Morrow*, 1998 WL 917802 at *11 (citing *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978)). And it noted that it must "affirm the convictions if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt." *Id.* (citing *Jackson*, 443 U.S at 317; Tenn. R. App. P. 13(e)). After laying out the standard, the state court discussed the pertinent facts: Morrow and his friends were "looking for a fight" when they followed the Westermans. During the chase, Michael was struck by a bullet and Hannah took control of the wheel. As Hannah slowed, Damien's car stopped in front of the Westermans' truck, while Morrow pointed a gun at the truck and exclaimed "[I've] got them now." Two other cars pulled up behind them. Hannah drove the truck through a ditch into a parking lot. When she attempted to exit the parking lot, the cars had blocked her access to the paved driveway. Meanwhile, Morrow was still pointing the gun at the truck. *Morrow*, 1998 WL 917802 at *13. Nowhere in its opinion did the state court reference three men on foot blocking the paved exit. Moreover, based on this set of facts, it would be reasonable to conclude that the offense was complete before the u-turn occurred.

There is no indication that the state court acted unreasonably. It viewed the evidence in the light most favorable to the state and assessed its sufficiency, under the essential elements of the charged offense, to support the jury's verdict. Morrow relies on the prosecutor's failed opening-statement promise that, during the trial, he would be able to show *direct evidence* of a consensus to box in the truck. But even though the State may not have shown direct evidence of intent, circumstantial evidence is enough. The state court reasonably applied *Jackson*'s deferential standard to the verdict and Morrow's claim fails.

*Felony Murder*. The state court also acted reasonably in affirming Morrow's felony murder conviction because there is sufficient evidence for a reasonable trier of fact to find each of the elements beyond a reasonable doubt. In Tennessee, felony murder is a "killing of another committed in the perpetration of or attempt to perpetrate" specific felonies, including kidnapping. Tenn. Code Ann. § 39-13-202(a)(2) (1995). Morrow claims that the killing was merely collateral to the kidnapping rather than part of an "attempt to perpetrate" the kidnapping.

But this argument also fails. To satisfy the "in perpetration" requirement, the killing need not be a committed during attempts to effectuate the kidnapping. *State v. Middlebrooks*, 840 S.W.2d 317, 332 (Tenn. 1992) ("Nowhere in the statute is there a requirement that the murder occur as a proximate cause of the kidnapping."); *see also State v. Buggs*, 995 S.W.2d 102, 108 (Tenn. 1999) ("[A] jury may reasonably infer from a defendant's actions immediately after a killing that the defendant had the intent to commit the felony prior to or concurrent with, the killing."). The state court considered Morrow and his friends' actions as a whole and these actions reasonably suggest an attempt to substantially interfere with the Westermans' liberty. And the shooting was completed during that attempt. While Morrow may have also been guilty of an assault during the incident, the state court did not act unreasonably in concluding that a

reasonable fact finder could determine that the entire chain of actions constituted an attempt to block the Westermans' truck in order to trap its occupants.

Because Morrow has not shown that the state appellate court unreasonably applied clearly established federal law or that it made an unreasonable determination of facts in light of the evidence presented under AEDPA, his sufficiency-of-the-evidence arguments fail.

**B.**

Morrow's ineffective-assistance-of-counsel claim is procedurally defaulted and is not excused by *Martinez*. To excuse default, the ineffective-assistance claim must, among other things, be a "substantial claim." *Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013) (citing *Martinez*, 132 S. Ct. at 1318–21). And Morrow has not shown that the ineffective-assistance claim was "substantial." Substantial claims are those that petitioner demonstrates have "some merit" under *Strickland*'s two-prong standard. *Martinez*, 132 S. Ct. at 1318–19. *Strickland v. Washington* first directs courts to assess counsel's performance and determine whether the assistance was reasonable. 466 U.S. 668, 691 (1984). "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* Next, there must be a reasonable probability that, but for counsel's errors, the result would have been different. *Id.* at 694.

*Performance*. Morrow has not shown defective performance under *Strickland* because Goodlett's decision not to investigate Burks was reasonable. Morrow argues that Burks's testimony was important for two reasons. First, he would have testified that no one got out of their cars, which would have contradicted the State's assertion that the group acted in concert. Second, this testimony would have called into question Hannah's alleged already fragile credibility as a witness because she testified that the men did exit the car. Morrow characterizes

- 10 -

Hannah's testimony that three men exited the cars to block her truck as the "slender reed" on which the State's kidnapping theory heavily relied. Appellant Br. at 51.

Morrow cannot show professional error. It is true that both Goodlett and Kroeger testified to the fact that Burks's testimony would have been helpful, but under *Strickland*, counsels' decisions are not analyzed with the benefit of hindsight. Goodlett's decision not to investigate is supported by the evidence he had at the time, namely Burks's statement to the police. In that statement, there was no evidence that Morrow communicated with Burks at any point during the incident, so Burks could not testify to Morrow's state of mind. Additionally, Burks originally said that the cars stopped for "a minute," a fact which potentially supports the kidnapping charge. Morrow points to his later federal testimony, where he stated that the cars were stopped for "[j]ust a couple of seconds." That is not the only contradiction in Burks's statements. Burks testified at the federal hearing that none of the men got out of the cars, but Morrow and Merriweather both testified at trial that Marcus Darden, who was driving Burks, got out of the car when the truck executed the u-turn. In light of the evidence in front of him at the time, Goodlett did not act below prevailing professional norms as required by *Strickland* in failing to investigate Burks.

*Prejudice*. Morrow has likewise not shown prejudice because there is no evidence that Burks's testimony would have made any difference in the outcome. Under the prejudice prong, any deficiency in counsel's performance must undermine confidence in the conviction. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011). Morrow emphasizes the fact that the State's case was weak because it relied on circumstantial evidence rather than direct evidence of intent to kidnap. But direct evidence of a consensus or a group effort was not required. Further, as discussed in Part II.A, there is no indication that the state court relied on Hannah's testimony as to the three

men exiting the car and it would be reasonable to conclude the offense was complete before Hannah's u-turn. Burks's additional testimony would not have changed the fact that three cars chased the victim and his wife at about 85 miles per hour while Morrow was shooting at the truck. There is, therefore, no reasonable possibility that Burks's testimony would have had an effect on the state court's conclusions.

**C.**

Finally, Morrow claims that the state violated his due process and equal protection rights when the Tennessee Supreme Court declined his application for review on direct appeal and thus failed to apply a new rule of state law. Specifically, at the time of trial, second-degree murder was not a lesser-included offense of felony murder under Tennessee state law. *State v. Gilliam*, 901 S.W.2d 385, 390–91 (Tenn. Crim. App. 1995). Between Morrow's trial and his application for review on direct appeal by the state supreme court, that law changed. *See State v. Burns*, 6 S.W.3d 453, 464 (Tenn. 1999); *State v. Ely*, 48 S.W.3d 710, 720 (Tenn. 2001). Morrow alleges that the trial judge erred in failing to consider lesser-included offenses of felony murder. In his state proceedings, Morrow raised this issue as a matter of state law, but he raised them as a matter of federal law for the first time in district court. The district court opinion recognized that he raised these claims, but disposed of them without discussing the merits or indicating clearly why the court was dismissing the claims. Morrow argues that we should reach the merits because the district court did so, or in the alternative, that we should remand for the district court to decide this issue at the first instance. While it is not clear how the district court disposed of the claims, this Court may affirm on any basis that is apparent from the record. We conclude as a matter of law that the federal claims were not exhausted in state court and that they are barred by procedural default.

Morrow has not shown cause and prejudice as required to excuse these procedurally defaulted claims. Procedural default may be excused if petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or that a fundamental miscarriage of justice will result from enforcing the procedural default. *Coleman*, 501 U.S. at 750. To show cause, petitioner must provide more than an "excuse" for the default. *Lundgren v. Mitchell*, 440 F.3d 754, 763–64 (6th Cir. 2006). Rather, "cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 763–64. (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)) (internal quotation marks omitted).

Morrow claims he has satisfied the cause requirement because he did not have a feasible opportunity to raise the federal claim on state post-conviction review due to the unique procedural posture of the case. He argues that when the Tennessee Supreme Court denied his application for direct review, he had already litigated his post-conviction claims through a petition and evidentiary hearing. But Morrow fails to acknowledge that the state court provided him with an opportunity to raise additional claims after his direct-review application had been denied. Specifically, on December 14, 2004, the Tennessee Supreme Court denied his application for direct review and on January 28, 2005, the post-conviction court asked Morrow whether he wanted to assert additional claims. Morrow declined. He has not shown cause.

**III.**

For these reasons, we AFFIRM the judgment of the district court.