Lexter Kennon Kossie#700661
William McConnell Unit
3001 South Emily Drive
Beeville, Texas 78102

10,978-37

10,978

April 12, 2015

RECEIVED IN
COURT OF CRIMINAL APPEALS
APR 16 2015

Abel Acosta, Clerk

Texas Court of Criminal Appeals
P.O. BOX12308, Capitol Station
Austin, Texas 78711

RE: **WR NO.10,978-37 (Trial Ct. No.679887-S)**
    **Application For Writ of Habeas Corpus**

Dear Clerk:

Please find enclosed my original motion and objection
to be filed in the above case number and presented to the
court as soon as possible.
Thank you for your kind assistance.

Sincerely,

Lexter Kossie
Lexter Kossie
**Pro se Applicant**

cc: **file**

NO. WR-10,978-37

EX PARTE § IN THE TEXAS COURT

§ OF CRIMINAL APPEALS

LEXTER KENNON KOSSIE, § AUSTIN , TEXAS
Applicant.

MOTION DENIED
DATE: 4-27-15
BY:

MOTION IN OPPOSITION TO TRIAL COURT'S FINDINGS
AND CONCLUSIONS OF LAW/ MOTION FOR A LIVE
EVIDENTIARY HEARING AND APPOINTMENT OF COUNSEL

TO THE HONORABLE JUDGES OF SAID COURT:

NOW COMES LEXTER KENNON KOSSIE, pro se, in good faith, files this his Motion In Opposition To Trial Court's Findings And Conclusions Of Law/Motion For A Live Evidentiary Hearing And Appointment Of Counsel. LEXTER KENNON KOSSIE, hereinafter ('Applicant') will show unto the Court that good grounds exists for granting his motions.

I.      Background

In November 1994, a jury found applicant guilty of the felony offense of aggravated robbery in Cause Number 679887 ('the primary case'), in the 185th Judicial District Court of Harris County, Texas. The jury also found the enhancement paragraph to be true and sentenced applicant to life in prison. The Fourteenth Court of Appeals affirmed applicant's conviction in an unpublished opinion issued on March 13, 1997. **Kossie v. State,** NO. 14-94-01171-CR, slip op. at 1, 1997 WL 109996 (Tex. App.-Houston [14th Dist.] March 13, 1997, n.w.h.)(not desig- nated for publication). Applicant did not file a petition for discretionary review with this Court.

Page 1

## II. Writ History

Applicant has filed (16) sixteen previous applications challenging his conviction and sentence in Cause No.679887. Applicant's previous considered writ applications in Cause Nos. 679887-A, 679887-C, and 679887-J were denied without a written order on March 15, 1995, granted on April 17, 1998 and denied without a written order on May 5, 2008, respectively.

The remaining writ applications in Cause Nos.679887-B, 679887-D, 679887-E, 679887-F, 679887-G, 679887-H, 679887-I, 679887-K, 679887-L, 679887-M, 679887-N, 679887-O, and 679887-P, were either dismissed without a written order or dismissed as an abuse of the writ. Thus, this Court as a result never considered these applications on the claims merits.

In an order dated February 6, 2008, this Court withdrew its denial of applicant's first habeas corpus application (Cause No.679887-A)(**Ex parte Kossie**, Writ No.10,987-09), and on reconsideration dismissed that application because applicant's direct appeal was then pending. (**Ex parte Kossie**, 2008 WL 366681(Tex. Crim.App.2008)). This Court also withdrew its dismissal of (3) three other habeas applications. **Ex parte Kossie**, Writ No. 10,978-13; **Ex parte Kossie**, Writ No.10.978-14; and **Ex parte Kossie**, Writ No. 10,978-15. This Court, thereafter denied relief requested in these writ applications on February 6, 2008.

After conclusion of applicant's direct appeal he filed in essence his initial habeas corpus application in Cause No.

679887-C considering this Court dismissed A and B writs for lack of jurisdiction due to applicant's direct appeals was then pending. On April 17, 1998, this Court granted relief in Cause No.679887-C in the form of an out-of-time appeal to allow applicant to file a petition for discretionary review. **Ex parte Kossie**, Writ No.10,978-12 (Texas Court of Criminal Appeals #73,038). In that writ application, as demonstrated above should be considered applicant's initial application, the claims included a claim that applicant's trial counsel was constitutionally ineffective during the penalty phase of applicant's sentencing trial, but it **did** **not** include a claim that trial counsel's ineffectiveness consisted in part of a failure adequately to investigate and to present mitigating circumstances during the penalty phase of applicant's sentencing trial.

This Court did not reach the merits of applicant's claim regarding whether trial counsel was constitutionally ineffective during the penalty phase of the sentencing trial, instead, as pointed out above, this Court granted relief in the form of allowing applicant to file an out-of-time appeal to file a P.D.R. See again **Ex parte Kossie**, Writ No.10.987-12 (Trial Court Cause No.679887-C).

III. **Applicant's Constitutional Claim**

In the instant application pending before this Court in Cause No.679887-S (Writ No.10,978-37), applicant presents

Page 3

a single constitutional deprivation claim that his trial counsel rendered ineffective assistance by failing to investigate and present mitigating circumstances during the penalty phase of the sentencing trial.

IV.      **Trial Court's Findings Of Fact And Conclusions Of Law**

On March 12, 2015, applicant filed a post conviction application for writ of habeas corpus with the 185th district court alleging that his trial counsel was ineffective during penalty phase of his sentencing trial by failing to investigate and present mitigating circumstances in which the trial court received the writ application on March 20, 2015. There was no response filed by the State of Texas to the allegations contained in the applications. Applicant presume the trial court made its own findings of fact and conclusions of law that the application was a subsequent application barred by sec.4 of article 11.07 Tex.Crim.Proc. Code, thereafter ordered the clerk of that court to transmit same to this Court.

This Court is not bound by a trial court's findings in a habeas corpus action, however, this Court generally accept those findings if they are supported by the record. **Ex parte Brandley**, 781 S.W.2d 886, 887-88 (Tex.Crim.App.1985).

V.      **Section 4 Statement**

Tex.Crim.Proc.Code art.11.07 §4(a)(1)(b)(c), provides that: "If a subsequent application for writ of habeas corpus

Page 4

is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that: (1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous applications;

(b) For purposes of Subsection (a)(1), a legal basis of a claim is unavailable on or before a date described by Subsection (a)(1) if the legal basis was not recognized by and could not have been reasonable formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state on or before that date.

VI.     **Legal Basis For Applicant's Subsequent Writ Application**

On May 28, 2013, the United States Supreme Court handed down its ruling in **Trevino v. Thaler**, 133 S.Ct. 1911 (2013). Applicant did not discover **Trevino** until December 12, 2014, the date in which offender Donald Wayne Herod #1538539, gave applicant a copy of **Trevino** to read. After reading the case applicant immediately wrote his prison law library suppervisor

Page 5

asking her to verify whether the hardback volume was on the shelf. The volume was not. See **exhibit A** and any additional exhibits mentioned hereinafter attached to memorandum and law submitted with writ application.

On May 28, 2013, the date of the **Trevino** court's ruling, applicant had already filed (16) sixteen previous applications challenging his conviction and sentence in Cause No.679887. Thus, claim presented in the instant writ application is procedurally barred under § 4, Tex.Crim.Proc. Code art.11.07.

However, applicant contends that this Court should excuse his procedural default, on the ground that he had good "cause" for not raising the claim at the right time, namely that, not only had he lacked effective counsel during his sentencing trial, but also lacked counsel during his first collateral review proceeding. Applicant asserts that his contentions are well supported by the Supreme Court's decision in **Trevino,supra**.

In **Trevino**, the Supreme Court held that lack of counsel on collateral review might excuse a defendant's state law procedural default. The Court wrote: ⌊A⌋ procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."

The rationale, as the **Trevino Court** concluded was that

the structure and design of the Texas appellate system in actual operation, makes it "virtually impossible" for an ineffective assistance of trial counsel claim to be presented on direct review. The Court further found that Texas procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance-of-trial-counsel on direct appeal.

Applicant contends that the instant case is the typical case in which the **Trevino Court** contemplated and envisioned **if** considering that the facts of the instant case are indistinquishable from those of the **Trevino** case. As in **Trevino,** applicant's trial counsel failed to investigate and present mitigating circumstances during the penalty phase of his trial. Specifically, applicant claims he received ineffective assistance of trial counsel during his punishment trial when counsel (1) waived the 10 days to prepare for the punishment trial without applicant's written consent or on record in open court (2) failed to inform applicant of his right to testify at the punishment trial or inquire into whether applicant had a desire to (3) failed to inquire into whether applicant had character witnesses (4) failed to consult with an expert in regards to the effect of chronic use of crack cocaine (5) failed to adduce evidence of applicant's general life and character and (6)

Page 7

wholly failed to investigate and present **any** mitigating circumstances during the penalty phase after having sufficient leads of applicant's drug addiction.

The **Trevino Court** has concluded that, Texas procedure makes it "virtually impossible" for an appellate counsel to adequately present an ineffective assistance ⌊of trial counsel⌋ claim as in the instant case, on direct review, citing **Robinson v. State**, 16 S.W.3d 808, 810-811 (Tex.Crim.App.2000).

Furthermore, this Court itself has found that "the inherent nature of most ineffective assistance" of trial counsel "claims" mean that the court record will often fail to "contai⌊n⌋ the information necessary to substantiate" the claim. **Ex parte Torres**, 943 S.W.2d 469, 475 (1997)(en banc).

This Court has further found that, "a writ of habeas corpus" issued in state collateral proceedings ordinarily "is essential to gathering the facts necessary to...evaluate.... ⌊ineffective-assistance-of-trial-counsel⌋ claim." **Torres, supra,** at 475. See **Robinson, supra,** at 810-811 (noting that there is "not generally a realistic opportunity to adequately develop the record for appeal in post-trial motions" and that "⌊t⌋he time requirements for filing and presenting a motion for new trial would have made it virtually impossible for appellate counsel to adequately present an ineffective assistance claim to the trial court").

See also **Thompson v. State**, 9 S.W.3d 808, 813-814, and
n. 6 (Tex.Crim.App.1999)("⌊I⌋n the vast majority of cases, the
undeveloped record on direct appeal will be insufficient for
an appellant to satisfy the dual prongs of Strickland"; only
"⌊r⌋arely will a reviewing court be provided the opportunity
to make its determination on direct appeal with a record cap-
able of providing a fair evaluation of the claim..."); **Good-
speed v. State**, 187 S.W.3d 390, 392 (Tex.Crim.App.2005)(simi-
lar); **Andrews v. State**, 159 S.W.3d 98, 102-103 (Tex.Crim.App.
2005)(similar);**Ex parte Brown**, 158 S.W.3d 449, 453 (Tex.Crim.
App.2005)(per curiam)(similar); **Jackson v. State**,973 S.W.j2d
954, 957 (Tex.Crim.App.1998)(per curiam)(similar). See also
42 G.jDix & J.j Schmolesky, Texas Practice Series §29:76, pp.844-
845 (3d ed. 2011)(hereinafter Texas Practice)(explaining that
"⌊o⌋ften" the requirement that a claim of ineffective assis-
tance of trial counsel be supported by a record containing
**direct evidence of why counsel acted as she/he did** "will re-
quire that the claim ... be raised in postconviction habeas
proceedings where a full record on the matter can be raised").

Applicant's appellate counsel did not claim on appeal
that applicant's trial counsel had been constitutionally inef-
fective during the penalty phase of the trial court proceeding
and even had appellate counsel pursued the ineffectiveness of
trial counsel on appeal, it would have been virtually impossible

to adequately brief the claim. That is because review of such a claim normally requires a different attorney, because it often "depend[s] on evidence outside the trial record." and because efforts to expand the record on direct appeal may run afoul of "[a]bbreviated deadlines." depriving the new attorney of "adequate time...to investigate the ineffective assistance claim." See **Martinez v. Ryan**, 566 U.S. 1 (2012). The instant case is the type of ineffective assistance of trial counsel claim in which the **Trevino Court** contemplated and envisioned. Thus, for the reasons stated above, applicant should be allowed to proceed on this forum with his procedurally defaulted constitutionally ineffective assistance of trial counsel claim. Moreover, applicant has shown that the legal basis for which allows him to present his claim in the instant writ application was not recognized by and could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state on or before May 28, 2013, the date in which **Trevino v. Thaler** was decided by the United States Supreme Court, 133 S.Ct. 1911(2013).

**VII.     Facts Warranting An Evidentiary Hearing**

On November 13, 1993, applicant and Eugene Williams had been doing crack cocaine prior to the robbery. See **exhibit**

**B.** After running out of crack and money they stopped at a Burger King restaurant in which applicant allegedly robbed by displaying a brown gun handle tucked inside of his waist-band hanging out. (Reporter's Record, Vol III,pp.107-108). Applicant initially told his trial counsel that the cashier that was working at the Burger King was his acquaintance and that she had freely given him the money out of the register and that no robbery actually had occurred. See **exhibit C p.1 par. 2** Applicant later confessed to trial counsel and told her that he had lied on the cashier because the cashier was lieing about seeing a gun. See **exhibit C p.2 par.5.** He also told trial counsel that he and Eugene Williams had been doing crack cocaine prior to the robbery and had applicant not been on crack he would not have robbed the Burger King. See **exhibit C p.3 par. 11.** He told counsel that he did not have a gun and that he only had his hand underneath his jacket faking as though he had something. See **exhibit C p.2 par.5.** Applicant asked counsel to help him get into CENIKOR DRUG TREATMENT PROGRAM. Counsel told him that it was no way they would accept him with his violent criminal background without ever making a motion to try to get applicant into the program. See **exhibit C p.2 par. 6 & 7.**

Applicant then filed a pro se Motion To Be Placed In A Substance Abuse Treatment Program but the trial court judge refused to rule on the motion. Since the trial court judge would not rule on the motion and the cashier was not going to tell the truth that she did not actually see a gun, applicant felt that he had no choice except to go to trial and claim that the cashier was his acquaintance and that she had freely allowed him to steal the money out of the register. Applicant insisted on going to trial with his fabricated defense. Though counsel did not want to go to trial on this defense because she knew that the cashier did not freely allow applicant to steal the money or otherwise participate in the crime counsel just went through the motions at trial but never had any real intentions of winning the case. See **exhibit C p.2 par.] 8.**

The jury found applicant guilty on November 29, 1994, of aggravated robbery by using and exhibiting a deadly weapon to wit: a firearm. On that same day counsel waived the 10 days to prepare for sentencing trial without applicant's consent or on record in open court. Counsel had no intentions to present any mitigating evidence during the punishment trial because she was still angry at applicant for dragging her through the guilt or innocent stage on the fabricated defense. See **exhibit**

C p.4 par 12. When the trial court asked, "Does either side have any evidence that they wish to offer on punishment?" Counsel replied, "The defense rests, Your Honor". See Reporter's Record Vol V, pp. 7 & 9.

### VIII. Arguments And Authorities Supporting A Remand To Trial Court For A Live Evidentiary Hearing

Applicant contends that there are controverted previously unresolved issues relating directly to the legality of his confinement which must be resolved requiring a live evidentiary hearing whereas trial counsel can specifically respond to the allegations of her ineffectiveness during applicant's sentencing trial. Applicant has alleged specific facts in his writ application which if are proven true would entitle him to habeas corpus relief. Firstly, applicant contends that trial counsel must explain under oath why she waived the 10 days to prepare for applicant's sentencing trial without his consent or on the record in open court as provided by TEX.CRIM.PROC. CODE art. 1.051. In **Ex parte Dunham,** 650 S.W.2d 825 (Tex.Crim.App.1983) and **Ex parte Morse,** 591 S.W.2d 904 (Tex. Crim.App.1980) both emphasize that a lawyer's lack of time to prepare for trial os one of several factors that could lead to habeas corpus relief, but this factor alone may may not be enough to merit relief. This right may be waived if not raised at trial. In other words, an applicant will not be

able to obtain writ relief absent a showing of harm or request for additional time to prepare for trial. See **Ex parte Reed**, 610 S.W.2d 495 (Tex.Crim.App.1981).

Here, in the instant case, additional time was required so that counsel could have consulted with applicant to determine whether he had any character witnesses that were willing to testify and whether these witnesses could have provided relevant testimony for the jurors to consider in mitigating punishment. JoAnn Kossie and Lucinda Kossie had such evidence and were willing to provide their testimony had counsel contacted then and prepared them for the sentencing trial. See **exhibit D.** Mitigating circumstances relevant to punishment are circumstances of the nature that JoAnn Kossie and Lucinda Kossie could have testified to, which would support a belief that defendants who commit criminal acts that are attributable to such circumstances are less culpable than others who have no such excuse. See **Muhammad v. State**, 46 S.W.3d 493 (Tex.App.-El Paso 2001, no pet.).

Secondly, applicant contends that an evidentiary hearing is needed so counsel can explain why at no time prior or during the punishment trial did counsel inform applicant of his right to testify or inquire into whether applicant desired to testify. Within hours after the jury's finding of guilt, counsel rushed into the sentencing trial. Counsel was totally

unprepared for the sentencing trial, and had no intentions to be or even letting applicant take the stand. In fact, counsel's only sentencing trial strategy was just to sit in as a "warm" body attorney and let the prosecutor roast applicant with his violent prior criminal record.Applicant contends that had counsel inquired into whether he desired to testify he would have insisted on taking the stand to at least admit the truth that he did not know the cashier as he had tried to lead the jurors to believe. He would also have let the jurors know that he respected their decision in finding that he had used a firearm but would have let them know that he did not have a gun during the robbery and that the only reason he had gone to trial was because the cashier had lied about seeing a brown gun handle.

He would have let the jurors know how remorseful he was in trying to implicate the cashier as a party to the crime but at the time he thought that it was in his best interest to do so. He He would have also let the jurors know that prior to committing the robbery he had done crack cocaine and had he not been on crack he would not have committed the robbery. He would have explained to them how intense the craving was for him to get more crack into his system and that the craving prevented him from conforming his behavior to the law. Applicant would have told the jurors that he lost all self-control because the craving was unbearable and all that matter at that time was that he

got some money to buy some more crack. He would have explained to them that he had been in several drug treatment facilities for chronic use of crack cocaine and alcohol abuse. Counsel could have easily verified this by acquiring and presenting evidence of applicant's medical records and documentation of applicant's crack addiction from the parole office. Thus,thirdly, an live evidentiary hearing is needed so trial counsel can explain why she made no attempt to retrieve this evidence for mitigating punishment even when applicant had provided her with sufficient leads of his drug addiction. Fourthly, counsel must explain why she made no attempts to consult with an expert in regards to the effect of chronic use of crack cocaine. Dr. Harry Bonnell explains in his sworn affidavit that the craving for cocaine can take control of rational thinking and make the person more capable of committing crimes and other illegal behaviors. See **exhibit E.**

With a minimum amount of investigating counsel could have discovered that chronic use of crack cocaine can cause temporarily insanity and that evidence of temporarily insanity could have been admitted for mitigation of punishment at applicant's sentencing trial. See **Seek v. State,** 646 S.W.2d 557 (Tex. App.-Houston ⌊1st Dist.⌋ 1982)("Evidence of temporarily insanity caused by intoxication was admissible in mitigation of penalty for aggravated rape"). V.T.C.A. Penal Code §§ 8.04, 21.02

(b)(2-4). With this evidence counsel could have requested an instruction on temparary insanity for the jurors to consider and in all likelihood counsel would have succeeded with her requests.

Applicant further contends that an live evidentiary hearing is needed so counsel can explain why she made no attempt to adduce or produce any evidence of applicant's general life and character. At the time of the offense applicant was a certified lab optician and was working full-time at McDuffy Optical. He he was married and had 3 kids ages 10 months, 3 years old and 13 years old and that he was a good father to his kids. Applicant contends that this evidence was relevant and with a minimum amount of investigation counsel could have discovered even more evidence of applicant's general life and character that only a lawyer can do. Evidence is relevant to the assessment of punishment if it provides information about about the defendant's life and characteristics. See **Minor v. State**, 91 S.W.3d 824 (Tex.App.-Fort Worth 2002).

Finally, applicant contends that trial counsel wholly failed to investigate and present any mitigating circumstances during the penalty phase of the trial. Applicant had been in several drug treatment facilities, namely, Herman Hospital, St. Joseph Hospital, West Oaks Hospital and his parole officer had him admitted into treatment at the Texas House which at that time was a facility for paroleess with drug addictions. All of

this evidence was documented by the parole board and with a minimum amount of investigation counsel would have discovered this evidence which would easily supported a request for an instruction on temporary insanity. While **Strickland** does not require defense counsel to investigate each and every potential lead, or present any mitigating evidence at all, it does require attorneys to put forth enough investigation efforts to base their decision not to present a mitigating case on a thorough understanding of the available evidence. See **Ex parte Woods**, No.WR-62,627-01, 2005 Tex.Crim.App. LEXIS 1859 (Nov.2. 2005)(designated for publication).

Here, in the instant case, counsel was provided with potential leads by applicant that his temporary insanity by chronic use of crack could have been offered as evidence to show that while applicant was under the influence of crack the craving overpowered him which prevented applicant from conforming his behavior to laws. Once counsel had these leads she was required to probe, inquire, investigate, consult and seek out whatever evidence she could discover to support an instruction on temporary insanity so that the jurors could consider as evidence in mitigating punishment at applicant's penalty trial. Voluntary intoxication is not a defense to crime. Tex.Penal Code Ann.§ 8.04(a)(Vernon 1994), however, evidence of temparary insanity caused by intoxication may be introduced in mitigation of punishment. See **Reyna v. State**, 11 S.W.3d 401 (Court of Appeals

[1st Dist] 2000). See also **Frias v. State**, 775 S.W.2d 871 (Tex. App.-Fort Worth 1989 no pet.).

In conclusion, applicant contends that evidence of his temporary insanity caused by chronic use of crack might have proved the mitigating factor that would have promoted jurors to give him a lenient sentence instead of the maximum sentence of life in which he received. With a minimum amount of investigation counsel could have discovered a wealth of additional evidence, thus, counsel's failure to investigate and present any mitigating circumstances deprived applicant of effective assistance of counsel making his sentencing trial fundamentally unfair. See **Wiggins v. Smith**, 539 U.S. 510 (2003).

Respectfully submitted,

/S/ Lexter Kossie

Lexter Kennon Kossie
TDCJ-CID #700661
William McConnell Unit
3001 South Emily Drive
Beeville, Texas 78102

**Appearing Pro se**

SIGNED ON THIS 12th day of April, 2015.

## PRAYER

**W H E R E F O R E, preises A R E considered,** Applicant prays that this Court will find that this is a permissible subsequent writ application under § 4(a)(1)(b)(c), art. 11.07 because the legal basis for the claim alleged in the instant case was unavailable on the date applicant filed his initial application or any previous considered application in that the United States Supreme Court's decision in **Trevino v. Thaler**, 133 S.Ct. 1911 (2013) was not decided until May 28, 2013, almost 15 years after applicant had filed his initial writ application and after any previously considered writ applications filed by the applicant.

Applicant prays this Court will further find that there are controverted, previously unresolved issues relating directly to the legality of applicant's confinement which must be resolved requiring a live evidentiary hearing in order that applicant's trial counsel can specifically respond to the allegations contained in the writ application in Cause No. 679887-S pending before this Court, thereafter hold said pending application in abeyance and remand the case back to trial court for such evidentiary with an order that applicant be appointed counsel for that proceeding.

ƧS/ _Lexter Kossie_
Lexter Kennon Kossie
**Pro se Applicant**

**INMATE"S   UNSWORN   DECLARATION**

I, Lexter Kennon Kossie,#700661, being presently incarcerated at the William McConnell Unit in Beeville, Texas, declare under penalty of perjury that, according to my beliefs and memory, the allegations made in my writ application are true and correct to the best of my knowledge.

/S/ *Lexter Kossie*

Lexter Kennon Kossie